First case for argument this morning is 22-1612, Analog Devices v. Vidal. Ms. Carton. Yes, Your Honors. Good morning. Please proceed. Thank you. Good morning, Your Honors. I'm Janine Carlin for Analog Devices. May it please the Court. We're here for just one issue, claim construction of one term found in the final limitation of the claims, said signal converters. The question we have is whether this term refers to all of the signal converters to which it has antecedent basis or just a subset. Is that really the question? I mean, because I took it that because of the comprising language, as long as there is a plurality of signals in the opening clause, then the later reference applies to those and it doesn't matter if there are other signals that wouldn't meet that qualification because it's a comprising claim. So first, let me address that argument that first came up in the intervener's brief. So it's a creative argument. It is a new argument from intervener. It wasn't presented below. Well, the intervener couldn't have presented that. Right. But it wasn't presented by anyone. We have to decide the claim construction according to what we think is right and it's consistent with what the Board said. The Board, I thought, pretty carefully said what's not required is that all of the signals in the system meet this requirement and made essentially a negative conclusion, which the government's, the director's position is one version of that. So let's go to the comprising argument first and not just the fact that it's new. We do think it's new because one reason is the petitioner and the Board, in the very first instance of this petition, applied all the prior art using all signal converters. So in their original interpretation in the first instance, they basically even used the color coding in the original briefing to say that it's all signal converters in the prior art. And you'll see that in the appendix, pages 171 through 172. But in another place, the petitioner said that the argument that the claim signal converters relate to all of them is not a contested point. That's in the appendix at page 459. And I'll also go into the case that the interveners pointed out in support of their position, Theracense. And I think that actually proves our point. That when you have a situation where you have the and said, and that's the basics here. When you look at the plain language of the claim, the and said, everyone knows this goes back to the same claim term that was introduced earlier. So when identical terms are later used along with said, that claim language is only susceptible to one meaning. There's no ambiguity with that. And we know here in each instance, the claims say the said signal converters always refers back to that first instance of said signal converters. So the Theracense case, which interveners pointed out, they rely on to say that you have a claim that has a working electrode, a counter electrode, and then the counter working electrode. But the court there held there could be other working electrodes that the counter electrode is not downstream of. But that is not the situation we have here. We are different. Because the first time we say signal converters, we say signal converters. So if you were to rewrite the Theracense claim, your first term would be, if it were like working electrodes, then it would be counter electrode, and then said counter electrode downstream of said working electrodes. It's downstream of all of them. That's what we have here. And that's the plain reading. And that is how a case law like process control court has held in these situations. The problem is the board actually held analog to an improper standard and said what you should have done is drafted the claim to say all said signal converters when it referred to signal converters again, or each of said signal converters. That's not required. And basically how the board has redone the claim with their construction is to insert the words less than all of said signal converters in that last limitation. Analog didn't draft it that way, and they could have. And you could see from the claim that analog knew how to draft those kinds of limitations. So if you look at limitation that we call 1D, you'll see analog has used the term at least a selected one of. So if analog wanted to claim a subset, less than all, they certainly could have done that. And so this is where using the plain language of the claim, if you just read it and you get to that last limitation of said signal converters, it refers back to 1C, which is just signal converters. And that is all of them. Can I just go back to, maybe I missed this in your presentation, but Judge Toronto started off by asking about comprising, and I know you made the argument that it wasn't included and it was waived and so forth, but do you have a substantive argument on comprising? Yes. The first one is that this is how all of the, for the entire IPR that the parties and the board has interpreted this. So in looking, you can see in the appendix that at 171 through 172, the board is applying signal converters, that term, to all of the signal converters in the prior art. That's the interpretation that's being used by the board. No one said that's not correct. And that is just how the board did it from the beginning. And it didn't waiver from that in any place in the first instance or all the way through to its final written decision. So I'm looking at 171, 172. This is what the board, is this the institution decision? No. What is it? Final decision. That is where they are showing, I'll explain. This is petitioner's document. Right. Oh, I thought you said it was the board, I'm sorry. The board applied it this way too in their institution. But this description of the petitioner is just describing what's in CSORA and it may be that in CSORA all of them have this property, but that's not saying that the 1C clause, which just says signal converters, and it doesn't say all signal converters in the system. So if you look at what we've pointed to here, 171 and 172, those are applying signal converters to all of the stages in CSORA. So that is what petitioner has done. And then we have the later statement from petitioner as well in their reply stating that this is not a contested point. That's the 459 page? Correct. Exactly. So this was never contested, the fact that it's all of them. So what has been contested is whether the last term said signal converters is all of the ones that are in term 1C. And that's where we point to the cases such as Sequoia and Harris and Infernal. And in Harris, you have one with the exact type of situation where the data refers back to all of the data. So I do think Saracens is a good example of our situation where if you look at the claim in that case, that is not what we have. They have simply a working electrode, as if we were to say a signal converter. If we had said a signal converter, then there could be others. But in this case, we're referring to signal converters and this claim goes to an analog to digital converter system. So here, it's all the signal converters and later when it refers to them, it's again all of the signal converters. So the board also referred to the specification here. And I think that's partly where they got down the wrong path by looking at the different figures. But it is instructive to your question too because it's important to look at the purpose of the invention. So looking at the specification, you see that the point of this invention really is to reduce the errors that are coming in on this analog signal. They could be part of the structure. You want to reduce the errors to the output device. And it's undisputed that the specification does disclose that dither being processed through all the stages will reduce this error. And you can see this in Appendix 79, Column 8, Lines 37 through 39 is where it says it So that is what the inventors are trying to do here. And the PTAB recognized this. And I think this is important because the PTAB said from a plain reading of this patent quote, using fewer than all the digital codes output by all the signal converters would result in a digital output of the converter not correctly reflecting the signal. So the purpose here is to get rid of these errors or minimize them as much as possible. And the PTAB did understand that having the dither processed through all of them was clearly discussed and yet they went on to say that if that's what you meant, then you should have put all in that last claim limitation. And that's the one that is on appeal here. And in fact, what the board did was find that one of these figures in the specification figure 7A was actually a less preferred embodiment and then they used that to go on with their claim construction. I do want to explain a little bit about what figure A is. Figure 7A is part of the disclosure. That is part of the inventor's investigation, however, where different structures are tried out in the system. And you can see that explained at the very beginning of the section where it talks about these figures. And that's in appendix 79, column 7, lines 1 through 2. So they're going to investigate these different structures. And in this investigation, 7A is one of the problems they discovered. The dither there, in that setup, fails to alter the signal processing path through the later stages. So the patent then describes that that failure of 7A is fixed by the dither arrangements in what's shown as figure B. Are you talking about column 8? Are we on the same page? Column 8? Yeah. Right there was column 7. So in column 7, lines 52 through 57, that's where the inventors say the dither fails to alter the signal processing path through these later stages. Then just a little bit further down. Can you go back up to the top of column 7, that opening paragraph where you started? Mm-hmm. Didn't that paragraph end, and it says we're going to talk about 7A through 7C, and then it starts on 7A, and it ends with a sentence that says, it is important to observe that this is an exemplary embodiment, as other system embodiments may include stages that convert various other combinations. How does this not qualify as one embodiment? So it's interesting, because in this spec you'll see, actually describing all the figures, they're described as signal converter system embodiments, figure 1 even. That's right in column 2, lines 21 through 22. So all of these figures are called system embodiments, but I do want to point out that absolutely nowhere in this spec does it say preferred embodiment, less preferred embodiment. That language was used at length by the board. It's not in there. You will not find that in the spec. And in fact, I think one of the places in the spec that's important is at column 8, lines 35 through 39, where the specification states that in figure 7B, where the dither goes through all the stages, is an important contrast to the situation in figure 7A. So it is contrasting the situation from figure 7A, saying it goes through all stages, and this is solving a problem that they identified, the errors. It is reducing the errors, just like in the Sequoia case. But the board's analysis consisted of whether or not this was a clear disavowal. Would this lead to a clear disavowal? They did talk about that? It did not. And is it your position that they're wrong on the law, or that this is a clear disavowal? Well, we didn't use the word disavowal, but it is certainly a discussion of why 7A doesn't work in achieving the goal. So if that's considered a disavowal, then it would be, because it's contrasting 7B to 7A. But even if it's not a disavowal, we still believe this claim construction is correct following the law of Sequoia, where you're not limited by the preferred embodiment, but you're following the teachings. Your construction is in aligning with what the patent, the plain language indicates. I think I might be out of my time. You are. Well, we still have a couple minutes of rebuttal, and let's hear from the government. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. I'm Peter Saurd on behalf of the intervener, the director of the USPTO. There's only a single issue before this Court today, one of claim construction. And fortunately, although this case may appear complex on the surface, it is actually quite simple. This Court is confronted with a question that it faces quite frequently, and that is whether to import a limitation from a preferred embodiment into the claim language. And the answer to that, as the Board correctly found, is no. The Board reviewed the specification and specifically reviewed the embodiments of Figure 6, which is the circuit diagram at a high-level block diagram, and then the performance of that circuit in Figure 7a and 7b, and found that they were both embodiments to practice the invention, and that there were no words of disavowal. And further, that there were no words in turning to the claim language itself that would limit that claim just to Figure 7b, the preferred embodiment, that would exclude 7a. And as its very simplest question before this Court, the way I can put it the easiest is, the Board was focused on the argument about whether to exclude Figure 7a from the ambit of Claims 1 and 13, 1 being representative, and then found the answer was no. And that's correct. The claim language was already discussed during my friend's opening statement, shows that. At APPX 79, beginning at the top of Column 7, it says, advantageous operation of these additional structures is investigated in Figure 7a through 7c. And then moving down in Column 7, after discussing and reviewing what is shown in Figure 7a, the 452 Patent Specification states, starting at line 46 of Column 7, the average error of these processing paths will thus be substantially reduced to thereby realize significant improvements in system linearity and substantially improve the system's INL. So it is described as advantageous. Is it your view they're talking about 7a here or 7a through 7c? 7a here specifically, because earlier it was introduced as I started with 7a through 7c, and then it starts talking about 7a specifically. And then at the point I just read in line 46, we're reaching the conclusion of the discussion about 7a. And then in the next paragraph, we transition because it says, is it apparent, I'm sorry, this is at line 52. But then what about, I'm still on Column 7, lines 57, 58, where they are talking about 7a, but then they move to b, and they talk about a failure in 7a, and say this failure is removed, exemplified in 7b and 7c. Right, and I think that's consistent with characterizing 7b as a preferred embodiment. And that's the way it's characterized also in the description of the figures, turning back to APPX 76, Column 2. The patent describes Figure 7a, it says it illustrates transfer functions of signal processing stages in the system of Figure 6, and possible dither levels in these stages. And then it says Figure 7b is similar to Figure 7a, and illustrates preferred dither levels. So clearly, over and over, 7a and 7b are both described as within the ambit of the invention. That also carries over to the description of Figure 6, because Figure 6 is the circuitry, and 7a and 7b both relate to Figure 6, and Figure 6 is described as the improvement over Figure 1. So it's consistent throughout the entirety of the 452 patent that 7a is included. Can you address the statement on page 459 of the appendix, which I think is maybe the petitioner's reply, I think it was suggested, was a statement that there really wasn't any dispute before the Board about whether all the signal converters in the system have to have this property? Yes, Your Honor. Please be patient. I have actually three answers to that. The first one is, as Your Honor has already pointed out this morning, this Court conducts de novo review of claim construction. So more than what was argued at what point, this Court's duty with de novo review is to construe the claim correctly. So that would be my first answer. The second answer is that on page 459, the discussion, even there in the early stages of the development of these arguments, is made in the context of what is labeled Limitation 1c, where signal converters are introduced. So that statement's made in the context of that limitation, not the arguments about the other limitations. But even there, petitioner says, see Section 5a above. If you read 5a, petitioner is making this exact same argument about what figures 7a and 7b show, and that the claim language can't be read to exclude 7a. So it's precisely the same argument, and it's sort of incorporated by reference, even following that statement. Was that two or three? That was two. Now I forgot my third point.  Yes, Your Honor. Oh, my third point was simply that this was an early stage in the proceeding, and the Board acknowledged that the arguments got refined over time. And so the Board did say in the final written decision at APPX 10, we considered this in one way in our institution decision, but because of how these arguments have been developed and fleshed out over time, we clarify our claim construction here. And that's at the top of APPX 10. And some, we're all new here. Your Honors are new to this case. I'm new as representing the intervener. And even Analog's counsel is new, because different counsel below. We all might have chosen, with the benefit of distance and time, to choose wording more carefully around these certain issues at every stage had we been involved below. But I think fundamentally, what the Board was doing is what it often does. It confronts a claim construction issue, but it doesn't go farther than it has to. It knew that the fundamental question was, do we read Claim 1 to exclude the embodiment of 7A? And they looked at the specification, they looked at the claim language, and they found the answer was no. And that's the question for this Court as well. But because 7A is an embodiment of the invention, although not the preferred embodiment of 7B, it's not excluded. It's not excluded by disavowal, and it's not excluded by the claim language. Your Honors have no further questions. Thank you. Your Honors, just briefly, I wanted to go back to the statement that this is a preferred embodiment, and there's a discussion of that in the disclosure of the drawings. So in the disclosure of the drawings in the patent, which is in Column 2, and Column 1 as well, there's no discussion of it being a preferred embodiment, again, that word is not used anywhere. The word preferred is used. The word preferred is used in that one place. I actually did a word search. So it's preferred dither levels, yes. And possible dither levels are in 7A. And again, I think that just goes right into the statement that this is an investigation as to what is the way to get these errors reduced. And if you go back to the comment about it being advantageous to reduce error, yes, it absolutely is. All of these probably reduce in some way. And you can see in Column 2 as well, when describing Figures 1 through 11, so that includes 1, it says that is signal converter systems embodiments, it uses the word, which substantially enhance conversion linearity. So again, you know, everything disclosed in here is doing some good, but what they're saying is 7B, you get it through all those stages, that's where the magic happens. I also wanted to address the claim construction in the final written decision. It is different than what was in the institution decision. And really what's different there is still that same term, the last term. We're not going back to 1C, we're talking about 1G, said signal converters. Originally, the board had considered that to mean at least one. And then they changed it to their final written description, which was, it could be less than all, which could be two. So that's the difference that they made in their claim construction. So unless your honors have any other questions. Thank you very much. We thank both sides and the case is submitted.